UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE THOMAS, ETHEL WILLIAMS, KEITH RICHARDSON, and others similarly situated, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | No. 05 C 4121 |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, LAKEFRONT SUPPORTIVE HOUSING CORPORATION, MERCY HOUSING, CHICAGO HOUSING AUTHORITY, JEAN BUTZEN[1] | ) ) ) ) ) ) ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

In their petition to intervene in *Gautreaux v. Chicago Housing Authority*, Case No. 66 C 1459 ("*Gautreaux*"), Petitioners Janice Thomas, Ethel Williams and Keith Richardson[2]

---

[1]The United States Marshals attempted service on Jean Butzen but returned the summons and complaint unexecuted on December 1, 2005. To date, it does not appear that Petitioners effected service on Butzen. Under other circumstances, we would notify Petitioners of their failure to comply with Rule 4 and order them to complete service by a specific date. Fed. R. Civ. P. 4(m). Because we dismiss the petition on other grounds, however, we need not do so.

[2]Thomas claims that she serves as legal counsel to Williams and Richardson in addition to acting *pro se* on her own behalf. While Thomas alleges that she was admitted to the Illinois bar in 1978, she has not filed an appearance to represent Williams and Richardson and, moreover, does not appear to be authorized to practice law. We will not strike the petition as to Williams and Richardson for their failure to comply with Federal Rule of Civil Procedure 11(a), however, because the defendants have not claimed any severe prejudice resulting from this procedural defect. *Kovilic Constr. Co., Inc. v. Missbrenner*, 106 F.3d 768, 771 (7th Cir. 1997); *see also Becker v. Montgomery*, 532 U.S. 757, 764-765, 121 S.Ct. 1801, 1806-1807 (2001) (holding that Rule 11's signature requirement is a procedural, but not a jurisdictional, requirement). As we dismiss the petition, we will not grant Williams or Richardson additional

("Petitioners") purport to represent a class of similarly-situated individuals and request injunctive relief against several of the defendants. Ultimately, Petitioners seek to bar the merger of Mercy Housing and Lakefront Supportive Housing Corporation ("Lakefront") and to enjoin construction of certain planned public housing facilities in Chicago. Defendants Mercy Housing, Lakefront, United States Department of Housing and Urban Development ("HUD"), and Chicago Housing Authority ("CHA") (collectively, "Defendants") filed separate but similar motions to dismiss the petition and/or for a more definite statement. For the reasons stated below, we grant Defendants' motions to dismiss the petition.

## BACKGROUND

In 1966, approximately 43,000 African-American tenants of, and applicants for, public housing filed actions against the CHA and HUD. In the early stages of the litigation, both agencies were found to have discriminated "by selecting housing project sites in predominantly black neighborhoods and by using racial quotas to limit the number of blacks in housing projects in predominantly white neighborhoods." *Gautreaux v. Pierce*, 690 F.2d 616, 619 (7th Cir. 1982). In 1981, the parties entered into a consent decree which purportedly terminated the litigation. *Id.* The consent decree, however, authorizes the district court to retain jurisdiction to enter orders involving the construction, implementation, modification or enforcement of the decree. *Gautreaux v. Pierce*, 707 F.2d 265, 266 (7th Cir.1983). Accordingly, we continue to address issues raised by the parties and intervenors with respect to the consent decree and various related agreements entered into over the decades.

In July 2004, the plaintiffs in *Gautreaux* filed a joint motion with the CHA regarding the

---

time to file signed pleadings.

intended development of Supportive Housing Initiative Sites. On August 12, 2004, we granted that motion, authorizing the CHA to supply project-based federal Section 8 funding for six specific projects, including a site to be located at 1234 North Clybourn Avenue. Based on a broad reading of the petition, Petitioners apparently question the process by which such sites are selected and approved. (Pet. ¶¶ 2-7, 13, 17.) As a result, Petitioners wish to block the merger of Mercy Housing and Lakefront[3] and the construction of housing at 1234 North Clybourn Avenue and 526-528 West Scott Street.[4] They cite 42 U.S.C. § 1983, the Civil Rights Act and "the principles of Gautreaux itself" as grounds for their proposed intervention. (*Id.* at 5.)

Petitioners filed an earlier, similar class action – *Thomas v. Butzen et al.*, Case No. 04 C 5555 – on August 25, 2004 against the current defendants, with the exception of Mercy Housing. In that case, which remains pending before Judge Guzmán, Petitioners alleged among other things that the *Butzen* defendants violated the Fair Housing Act, and 42 U.S.C. §§ 1982 and 1983. (*Butzen* Compl. ¶¶ 1-7.) As they do here, Petitioners sought to enjoin the construction of the 1234 North Clybourn Avenue facility. (*Id.* at pp. 18-19.) Judge Guzmán denied the motion for injunctive relief and dismissed that claim due to lack of ripeness and Petitioners' lack of standing. *Thomas v. Butzen et al.*, No. 04 C 5555, 2005 WL 2387676, at *2 (N.D. Ill. Sept. 16, 2005). Because Petitioners elected not to amend their complaint in accordance with Judge Guzmán's order, he dismissed the relevant claims with prejudice. *Id.* at *14.

Based on the above, Defendants each filed a motion to dismiss the petition on similar

---

[3]Mercy Housing and Lakefront completed their merger on January 1, 2006. Though now known as Mercy Housing Lakefront, we will continue to refer to them independently.

[4]It is not clear whether Petitioners challenge one site under construction at the intersection of Clybourn and Scott or whether there are two sites planned for that neighborhood.

3

grounds.[5] Defendants contend that Petitioners lack standing to intervene in *Gautreaux*, that their petition is untimely and fails to comply with Rule 24, and that their claims are barred by *res judicata* and/or collateral estoppel. Defendants also argue that the petition should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. In the event that the petition withstands our review, Mercy Housing and Lakefront request a more definite statement under Rule 12(e).[6]

Petitioner Thomas' response focuses largely on the facts surrounding her evictions from public housing. She clarifies that she seeks permissive intervention pursuant to Rule 24(b), rather than intervention as a right. (Thomas Resp. at 10-13.) She further contends that the eleven-month delay between our August 12, 2004 order and the filing of the petition should be excused. (*Id.* at 12.) Thomas also argues in passing that *Gautreaux* "provides a separate cause of action from the Fair Housing Act." (*Id.* at 8.)

---

[5] On March 29, 2006, Petitioner Thomas moved to strike HUD's December 23, 2005 motion to dismiss due to HUD's alleged failure to serve any petitioner with that motion or its February 23, 2006 reply brief. HUD's certificates of service suggest that it may not have updated its records after Thomas filed Notifications of Change of Address on November 10, 2005 and February 6, 2006. Nonetheless, counsel for HUD claims that he hand-delivered a copy of the initial motion to Thomas. (Fed. Def.'s Resp. Mem. Opp. Pl.'s Mot. Strike at 2.) Either way, Thomas obviously learned of HUD's motion around the same time she responded to the other pending motions to dismiss. She cannot allege significant prejudice given the similarity among those motions, nor was the Court's docket affected. Accordingly, her motion to strike [Docket No. 53] is denied. Although Thomas never submitted a substantive response to HUD's motion, we will consider her arguments opposing the motions filed by Mercy Housing, Lakefront and CHA.

[6] Defendants Mercy Housing and Lakefront also moved to strike Petitioner Thomas' March 24, 2006 response brief as untimely. Thomas received an extension of time in order to oppose this motion but failed to respond. While we withheld ruling on this motion to strike, we ordered the parties on April 4 to substantively reply to her response to the motions to dismiss by April 14. In light of the lack of prejudice to Mercy Housing and Lakefront (particularly as we ordered them to reply anyway) and our general disfavor towards motions to strike, we deny the motion [Docket No. 55].

4

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 24(b) provides that a court may allow permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). As a rule, permissive intervention is allowed in cases only where an application to intervene is timely. *Heartwood, Inc. v. United States Forest Serv.*, 316 F.3d 694, 701 (7th Cir.2003). In addition to timeliness, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). District courts have broad discretion whether to grant or deny permissive intervention. *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir.2000) ("Permissive intervention under Rule 24(b) is wholly discretionary and will be reversed only for abuse of discretion.").

## ANALYSIS

As we construe the petition, the crux of Petitioners' argument is that the decision by the *Gautreaux* parties to construct the North Clybourn facility, as authorized by us, was made without any notice to or input from tenants or the public. (Pet. ¶¶ 2-6.) Petitioners specifically complain that the decisionmakers are "accountable to no-one." (*Id.* ¶ 7.) They further condemn Lakefront's ability to "get bigger" by merging with Mercy Housing despite allegedly failing to provide genuine, humane support to its residents. (*Id.* ¶¶ 9-10, 14; Thomas Resp. at 3-4.) Instead, as Petitioner Thomas claims in her response, Lakefront unfairly targets residents for eviction, particularly if they speak out on behalf of the tenants. (Thomas Resp. at 3-7.) The primary purpose of the Petition is essentially to "put[] the makers of the CHA construction program on notice that there is a whole class of people disserved" by Lakefront. (*Id.* at 3.)

Although Petitioners thus raise questions (often rhetorical) about the day-to-day management

5

and quality of public housing in Chicago, their claims nonetheless have little or no connection to *Gautreaux*. The long-standing *Gautreaux* litigation involves claims that various state and federal authorities selected sites for public housing based on the racial makeup of the surrounding communities and restricted the number of black residents living in projects in white neighborhoods, resulting in the widespread racial segregation of public housing residents. *See, e.g., Gautreaux*, 690 F.2d at 619; *Gautreaux v. Chicago Housing Auth.*, No. 66 C 1459, 2004 WL 1427107, at *1 (N.D. Ill. June 23, 2004). While Petitioners challenge the decision to build a facility at 1234 North Clybourn, they do not allege that this construction is intended to, or will, result in racial segregation. Nor do Petitioners claim that this particular construction project will violate any *Gautreaux* consent decree.[7] Similarly, Petitioners have not articulated how their concern over the Mercy Housing – Lakefront merger shares any common question of law or fact with *Gautreaux*. Because Petitioners failed to show that their claims bear any relation to the claims or defenses of the parties in *Gautreaux*, we deny their petition to intervene.

Even if Petitioners presented claims related to those in *Gautreaux*, we agree with Defendants that the petition is untimely and intervention would unduly prejudice the parties. Our analysis of the petition's timeliness is "essentially one of reasonableness: potential interven[o]rs need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (internal quotation omitted). Considering the totality of the circumstances, we take into account four

---

[7]Petitioners also allege that Lakefront proceeded with construction at 1234 North Clybourn despite their filing of the *Butzen* injunction action. (Pet. ¶ 9.) Indeed, Petitioners submitted pictures of construction equipment at what we assume is this particular location. They fail to recognize that in the absence of an injunction order, Defendants remain free to continue construction as agreed by the *Gautreaux* parties.

factors "to determine whether a motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Sokaogon Chippewa Cmty.*, 214 F.3d at 949; *see Gautreaux*, 2004 WL 1427107, at *2. In this case, Petitioners claim they did not realize the significance of our August 10, 2004 order in *Gautreaux* until 60 days after its entry. (*Id.* at 12.) Yet they do not deny that on August 25, 2004 – less than two weeks after that order – they filed the *Butzen* case, asserting nearly identical claims and requesting the same relief, though "using different legislative and statutory authority." (Thomas Resp. at 10.) Furthermore, assuming Petitioners needed a reasonable amount of time to review our order and draft a petition, they neglect to explain the *eleven-month* delay between our order and the filing of the petition. Petitioners admittedly knew of their purported interests in *Gautreaux* by mid-October 2004, at the latest, but did not act until July 2005. Although there is no set time limit by which a potential intervenor must file a petition, we conclude that Petitioners simply waited too long before attempting to intervene.

In addition, allowing Petitioners to intervene at this juncture would unfairly prejudice the *Gautreaux* parties. The parties spent the past two years planning and presumably beginning the construction of the 1234 North Clybourn facility. Requiring them to stop or delay this project to entertain untimely challenges from Petitioners would prejudice the parties, as well as those who will live in the facility once completed. In contrast, Petitioners will not be prejudiced by our denial of the petition. They raised similar arguments in *Butzen* and thus already received the benefit of judicial review of their claims. None of the Petitioners alleged that they will be personally injured by the merger of Mercy Housing and Lakefront or by the construction of the North Clybourn

7

facility. In short, it would not serve the interests of justice or judicial economy to allow Petitioners to litigate these claims in a second action. *See iwork Software, LLC v. Corporate Express, Inc.*, No. 02 C 6355, 2003 WL 22494851, at *5 (N.D. Ill. Nov. 4, 2003).[8] Finally, there are no unusual circumstances mitigating in Petitioners' favor. As a result, we exercise our discretion to deny the petition.

---

[8]As Defendants observe, Petitioners may also be barred from intervening under the principles of *res judicata* and/or collateral estoppel. Judge Guzmán rejected several of Petitioners' claims in *Butzen*, which may preclude Petitioners from raising them again here. Because we grant Defendants' motion and dismiss the petition on other grounds, we need not determine whether certain orders in *Butzen* have a preclusive effect here.

For the same reason, we decline to address whether Petitioners lack standing to intervene in *Gautreaux*. Standing does not appear to be required for intervention under Rule 24(b). *See Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996) (commenting that "'interest' does not appear in Rule 24(b)" and that permissive intervention requires only that "the applicant have a claim or defense in common with a claim or defense in the suit"); *Habitat Educ. Ctr., Inc. v. Bosworth*, 221 F.R.D. 488, 496 (E.D. Wis. 2004). Even if required, our review of the standing issue would likely be precluded pursuant to Judge Guzmán's decision in *Butzen*. 2005 WL 2387676, at *2; *see Perry v. Sheahan*, 222 F.3d 309, 317-318 (7th Cir. 2000) (holding that the preclusive effect of an earlier standing decision applies to that issue only.) While not deciding this question, we agree with Defendants that Petitioners' interest in blocking the merger and Near North construction is extremely attenuated, at best.

Finally, given that Mercy Housing and Lakefront finalized their merger more than six months ago, Petitioners' challenge to that action is likely rendered moot.

**CONCLUSION**

For the above stated reasons, we grant Defendants' motions [Docket Nos. 25, 32, 37, and 42] and dismiss the petition. We also deny Petitioner Thomas' motion to strike HUD's motion to dismiss [Docket No. 53]. We similarly deny Mercy Housing and Lakefront's motion to dismiss Petitioner Thomas' response brief [Docket No. 55]. It is so ordered.

                                          MARVIN E. ASPEN
                                          United States District Judge

Dated: July 6, 2006